IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| YASSIN HAYTHAME MOHAMAD,  )<br>                    Plaintiff,  )<br>                          )<br>  vs.                    )<br>                          )<br>BARRY SMITH, (Lieutenant) in his own  )<br>Capacity; STEPHEN BEST, (Correctional  )<br>Officer) in his own Capacity; ROBERT  )<br>DICK, (Correctional Officer 1) in his own  )<br>capacity; THOMAS BOGARDUS,  )<br>(Sergeant) in his own capacity,  )<br>                    Defendants.  ) | Civil Action No. 09-943<br>U.S. Magistrate Judge Maureen P. Kelly<br><br><br>ECF No. 45 |

## OPINION

**KELLY, Magistrate Judge**

Plaintiff, Yassin Haythame Mohamad, ("Plaintiff" or "Mohamad"), is a prisoner in the custody of the Pennsylvania Department of Corrections ("DOC"), and is currently incarcerated at the State Correctional Institution ("SCI") at Graterford.   Mohamad has brought this civil rights suit against Lieutenant Barry Smith ("Smith"), Corrections Officer Stephen Best ("Best"), Corrections Officer Robert Dick ("Dick") and Sergeant Thomas Bogardus ("Bogardus") (collectively, "Defendants"), alleging that Defendants used excessive force against him during an altercation that occurred on December 17, 2007, while Mohamad was housed at SCI-Forest. Presently before the Court is a Motion for Summary Judgment submitted by Defendants.  ECF No. 45.  For the reasons that follow, the Motion will be granted.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

It is undisputed that as of December 17, 2007, Mohamad was on a variety of security-related movement restrictions due to his history of assaultive behavior.[1]  The restrictions, which

---

[1] The record demonstrates that since 1997, Mohamad has incurred 425 institutional misconducts, including over 100 misconducts for threatening staff members and over 40 misconducts for assault.  See ECF No. 46-2.

were to be used whenever Mohamad was out of his cell, required that Mohamad be handcuffed at all times; that the handcuffs were to be attached to a waist belt and a tether; that he was to be shackled; that all movement was to be videotaped; that a Commissioned Officer was required to be present at all times; and that Mohamad was to wear a spit shield.[2]   ECF No.  46-1: pp. 4-5 at ¶ 4; p. 11 at ¶ 4; pp. 16-17 at ¶ 4.   It is also undisputed that Defendants were aware not only generally of Mohamad's history of assaultive behavior but of the movement restrictions imposed on him.  ECF No. 46-1, p. 5 at ¶ 5.   See ECF No. 46 ¶¶ 6, 7; ECF No. 55 ¶¶ 6, 7.

On December 17, 2007, Defendant Smith, as a Commissioned Officer, was supervising Defendants Best and Bogardus as they escorted Mohamad from the Receiving and Discharge ("R&D") area at SCI-Forest to the Restricted Housing Unit ("RHU").   Defendant Dick was assigned to operate the hand held video camera.[3]  ECF No. 46-1: p. 4 at ¶¶ 2, 18; p. 9; p. 11 at ¶ 2; p. 16 at ¶ 2.  See ECF No. 46, ¶ 4; ECF No. 55 ¶ 4.  Defendants have attested to the fact that as they were preparing to escort Mohamad from R&D to the RHU, they were informed that his inmate ID photo was outdated and that they were to escorted Mohamad to the photo room.  ECF No. 46-1: p. 5 at ¶ 6; p. 12 at ¶ 6; p. 17 at ¶ 5.  See ECF No. 46-3, pp. 1-11.

The evidence shows that, at the time, it was the policy of the DOC that inmates were to remove all head gear, including religious head gear, when having inmate ID photos taken.   ECF No. 46-3, pp. 13-14.  See ECF No. 46-1: p. 5 at ¶ 8; p. 12 at ¶ 8.  Accordingly, upon arriving in the photo room, Smith removed Mohamad's kufi[4] since Mohamad was restrained and could not

---

[2] A spit shield is designed to prevent inmates from spitting on officers and is utilized only on inmates with a history of spitting or threatening to spit on officers.  Id.

[3] Indeed, Defendants have submitted the DVD recording of the incident taken by Defendant Dick which largely corroborates the facts as set forth herein.  See ECF No. 46-1, p. 2.

[4] A kufi is "a close-fitting brimless cylindrical or round hat."  Merriam-Webster Dictionary Online.  Although Defendants have spelled it "kuffee" the Court has found only the spelling used by Mohamad in the dictionary.

remove it himself.  ECF No. 46-1: p. 5 at ¶ 8; p. 12 at ¶ 8; p. 17 at ¶ 6.  <u>See</u> ECF No. 143-3, pp. 1-11.  When Smith removed the kufi, Mohamad became non-compliant and repeatedly stated that "I'm not taking no picture."  ECF No. 46-1: p. 5 at ¶ 9; p. 12 at ¶ 9; p. 17 at ¶ 6.  In an effort to prevent the staff from taking his photo, Mohamad bowed and turned his head numerous times.  According to Smith and Best, they consequently became concerned that Mohamad, who obviously was not wearing his spit shield, might spit on them.  ECF No. 46-1: p. 5 at ¶ 10; p. 12 at ¶ 10; p. 17 at ¶ 7.  Best therefore attempted to restrain Mohamad's head in an effort to protect himself and to permit the photograph to be taken.  Mohamad, however, continued to be non-compliant, turning his head so that the picture could not be taken.  Defendants have attested to the fact that Mohamad then pushed back into Defendant Best, who was standing behind Mohamad, knocking him off balance.  ECF No. 46-1: p. 12-13 at ¶¶ 10, 11; p. 17 at ¶ 7.  Moreover, although not clear from the DVD recording, Best has also attested to the fact that he felt Mohamad's hands, which were cuffed behind his back, attempting to grab hold of him.  ECF No. 46-1, p. 13 at ¶ 11.

At that point, Smith and Best determined that the situation was "getting out of control" and that steps needed to be taken to ensure their safety and the safety of the other officers in the area.  Consequently, Defendants took Mohamad to the floor.  ECF No. 46-1: p. 6 at ¶¶ 12, 15; p. 13 at ¶ 12; p. 17 at ¶¶ 8, 9.  After regaining control, Mohamad was brought to his feet and the spit shield was placed on him.  He was then escorted to the RHU without further incident.  ECF No. 46-1: p. 6 at ¶ 15; p. 13 at ¶ 15; p. 17 at ¶ 10.  It is undisputed that Defendant Dick had no role in the incident other than to record it on the hand held camera.  ECF No. 46 ¶ 30; ECF No. 55 ¶ 30.  <u>See</u> ECF No. 46-1: p. 7 at ¶ 18.

The Defendants have also submitted evidence that a medical assessment of Mohamad was conducted immediately after the incident in accordance with DOC policy when there has been a use of force.  ECF No. 46-3, pp. 15-18.  The medical reports show that Mohamad did not suffer any injury and that no treatment was necessary.  Id.

Mohamad nevertheless initiated this action on July 20, 2009, bringing claims against Defendants for use of excessive force under the Eighth Amendment to the United States Constitution.  Mohamad also cites to the First and Fourteenth Amendments in his Complaint, as well as to the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc *et seq*.  ECF Nos. 1, 3.

Defendants filed an answer to the Complaint on November 10, 2010, and discovery closed on April 20, 2011.  ECF Nos. 22, 34.  Defendants filed the instant Motion for Summary Judgment on June 17, 2011, ECF No. 45, which is now ripe for review.

## II.     STANDARD OF REVIEW

Summary judgment is warranted only where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of demonstrating to the court that there is an absence of evidence to support the non-moving party's case.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  See Conoshenti v. Public Service Electric & Gas Company, 364 F.3d 135, 140 (3d Cir. 2004).  When the moving party has met this burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e) (2).  The mere existence of some evidence favoring the non-moving party, however, will not defeat the motion.  There must be enough evidence with respect to a particular issue to

enable a reasonable jury to find in favor of the non-moving party.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  See McGreevy v. Stroup, 413 F.3d 359, 363-64 (3d Cir. 2005).  In evaluating the evidence at the summary judgment stage, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor.  Matreale v. New Jersey Dep't of Military & Veterans Affairs, 487 F.3d 150, 152 (3d Cir. 2007).

## III.  DISCUSSION

### A.  Eighth Amendment Use of Excessive Force Claims

Under the Eighth Amendment, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted . . ."  U.S. Const. amend. VIII.  See Ingraham v. Wright, 430 U.S. 651, 664 (1977).  The cruel and unusual punishments clause "was designed to protect those convicted of crimes" and, thus, prohibits the "unnecessary and wanton infliction of pain" on prisoners in the custody of the state.  An Eighth Amendment violation will therefore be found where the punishment at issue serves "no legitimate penological interest."  Id. Rhodes v. Chapman, 452 U.S. 337, 345-346 (1981).   See Giron v. Corrections Corp. of Am., 191 F.3d 1281, 1290 (10th Cir. 1999), quoting Whitley v. Albers, 475 U.S. 312, 320-21 (1986) (Where no legitimate penological purpose can be inferred from a prison employee's alleged conduct …. the conduct itself constitutes sufficient evidence that force was used "maliciously and sadistically for the very purpose of causing harm").

Courts, however, generally defer to the judgment and policies of prison officials who are charged with maintaining internal order and discipline in the prisons and often must make snap decisions in volatile and dangerous situations.  Hudson v. McMillian, 503 U.S. 1, 6 (1992). Officials must balance the threats presented by prison unrest to prison workers, inmates and administrators "against the harm inmates may suffer if guards use force."  Id.  Because of these

competing concerns, the standard to measure the propriety of the use of force by prison
authorities is "whether force was applied in a good-faith effort to maintain or restore discipline,
or maliciously and sadistically to cause harm."  Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir.
2000), citing Hudson, 503 U.S. at 7.  To resolve the inquiry, Courts are to consider:

> (1) the need for the application of force; (2) the relationship between the
> need and the amount of force that was used; (3) the extent of injury
> inflicted; (4) the extent of the threat to the safety of staff and inmates, as
> reasonably perceived by responsible officials on the basis of the facts
> known to them; and (5) any efforts made to temper the severity of a forceful
> response.

Giles v. Kearney, 571 F.3d 318, 326 (3d Cir. 2009).

With respect to the first factor -- the need for the application of force -- Mohamad has
admitted to the fact that he was resisting the officers and otherwise acting in such a manner to
prevent his picture from being taken.  ECF No. 46, ¶¶ 15, 17; ECF No. 55, ¶¶ 15, 17.  He has
also admitted that the situation was getting out of control and that Defendants Smith and Best
determined that they needed to take action for their safety and that of the other officers in the
area.  ECF No. 46, ¶ 18; ECF 55, ¶ 18.   It therefore appears clear that the application of at least
some force was necessary for the officers to regain control of the situation.

As to the second factor, it also appears that Defendants used no more force than was
necessary to gain control of Mohamad and maintain their safety.  Indeed, Mohamad does not
dispute that officers are trained to utilize certain control techniques to regain control of unruly
and/or combative inmates and that one such technique is to place the inmate on the floor.  ECF
No. 46, ¶¶ 20, 21; ECF 55, ¶¶ 20, 21.  In addition, Defendants have asserted that they used no
more force than necessary to gain control over Mohamad and defuse the situation -- assertions
that are amply supported by the DVD recording.  ECF No. 46-1: p. 7 at ¶ 19; p. 13 at ¶18; p. 17
at ¶ 13.  See ECF No. 46-1, p. 2.  Mohamad has not pointed to any evidence to the contrary.  As

such, consideration of the second factor -- the relationship between the need and the amount of force that was used -- suggests that no excessive force was used.

As to the third factor -- the extent of injury inflicted -- the record shows that a medical assessment of Mohamad was conducted immediately after the incident and that the resulting reports shows that Mohamad did not suffer any injury and that no treatment was necessary. ECF No. 46-3, pp. 15-18.   In fact, not only does the DVD recording corroborate that assessment but the medical report states that Mohamad denied any injury, stating "I'm okay."  Id.; ECF No. 46-1, p. 2.  Although Mohamad now contends that he was never seen by the medical staff and that the medical staff conspired with Defendants to falsify the medical reports as evidenced by the fact that Smith's wife, Linda Smith, was a senior nurse working on the date and time in question, he has submitted no evidence to support his assertions.  Indeed, the record is not only completely devoid of any mention of Linda Smith but the Medical Injury Report indicates that Mohamad was seen by Gary Prinkey, RN, and not Mrs. Smith.  Id.  Thus, while not dispositive standing alone, the fact that Mohamad did not suffer any discernible injuries suggests that the force utilized by Defendants was not excessive.

Nor does consideration of the fourth factor suggest that excessive force was used by Defendants as it was more than reasonable for Defendants to perceive a threat to their safety under the circumstances.  Defendants have not only presented evidence of Mohamad's extensive history of assaultive behavior and threats to staff members, which Defendants were well aware of, but it is undisputed that Mohamad was being non-compliant and that the situation was getting out of control.  ECF No. 46-1: p. 5 at ¶ 5; p. 13 at ¶ 13.  See ECF No. 46 ¶¶ 6, 7, 8, 17, 18; ECF No. 55 ¶¶ 6, 7, 8, 17, 18; ECF No. 46-2.

As to the fifth and final factor, Defendants appear to have made reasonable efforts to temper the severity of force in responding to Mohamad's unruly behavior.  The record demonstrates that Defendants' repeated attempts to prevent Mohamad from turning his head so that his photograph could be taken were neither aggressive nor provoking and that it was Mohamad's failure to comply with their orders, coupled with him backing into Best, that necessitated further action by Defendants. ECF No. 46-1, p. 6 at ¶ 15.

This evidence clearly demonstrates that Defendants' actions in taking Mohamad to the ground was designed to defuse an escalating situation that, given Mohamad's remarkable history of assaultive behavior, could have impacted the safety of Defendants as well as other officers in the area.  It follows that the force used in order to take a resisting Mohamad to the ground was applied in a good-faith effort to restore and maintain discipline and, thus, designed to serve a legitimate penological interest.  Moreover, Mohamad has not offered any evidence which would suggest that Defendants applied any more force than necessary or that the force used was applied maliciously and sadistically to cause harm.  Indeed, review of the DVD recording, which shows that the incident occurred in a matter of seconds, belies any such assertion.  As such, no reasonable juror could find that Defendants' use of force was excessive or in violation of the Eighth Amendment's prohibition against cruel and unusual punishment.  Defendants, therefore, are entitled to summary judgment on Mohamad's Eighth Amendment claim.

**B.     First Amendment Free Exercise Claims**

Mohamad also purports to bring a claim under the First Amendment.  Although not set forth in his Complaint, the facts of this case suggest that any First Amendment claim would

necessarily revolve around the free exercise of religion clause.[5]  Defendants argue that this claim

is also subject to summary judgment because they are entitled to qualified immunity.

"The qualified immunity doctrine 'protects government officials from liability for civil

damages insofar as their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known.'"  Sharp v. Johnson, ___ F.3d ___, ___,

2012 WL 400667 at *12 (3d Cir. Feb. 9, 2012), quoting Pearson v. Callahan, 555 U.S. 223, 231

(2009).  See Ray v. Twp. of Warren, 626 F.3d 170, 173 (3d Cir. 2010).

> "[C]learly established rights" are those with contours sufficiently clear that
> a reasonable official would understand that what he is doing violates that
> right.  A plaintiff need not show that the very action in question has
> previously been held unlawful, but needs to show that in light of preexisting
> law the unlawfulness was apparent.

McLaughlin v. Watson, 271 F.3d 566, 571 (3d Cir. 2001), citing Shea v. Smith, 966 F.2d 127,

130 (3d Cir.1992).  Because "[q]ualified immunity protects 'all but the plainly incompetent or

those who knowingly violate the law,' so long as an official reasonably believes that his conduct

complies with the law, qualified immunity will shield that official from liability."  Sharp v.

Johnson, ___ F.3d at ___, 2012 WL 400667 at *12, quoting Malley v. Briggs, 475 U.S. 335, 341,

(1986).  See Pearson, 555 U.S. at 244; Ray, 626 F.3d at 173–74.

Here, Mohamad has not presented any evidence that Defendants violated any religious

protocol much less a clearly established right by removing his kufi while attempting to take his

inmate ID photograph.  To the contrary, the record shows that Defendants were acting pursuant

to DOC policy requiring that all head gear, including religious head gear, be removed when

inmate ID photos are taken.  ECF No. 46-3, pp. 13-14.  See ECF No. 46-1: p. 5 at ¶ 8; p. 12 at ¶

---

[5] The First Amendment provides that: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridgment of freedom of speech, or of the press, or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."  U.S. Const. amend. I.

8.  Indeed, Defendant Smith has attested to the fact that he removed Mohamad's kufi because of the DOC policy and because Mohamad was unable to remove it himself because he was restrained.  ECF No. 46-1, p. 5at ¶ 8.  This evidence established that Defendant Smith reasonably believed that his conduct complied with the law.  Absent evidence to the contrary, Defendants are entitled to qualified immunity as to Mohamad's First Amendment claim.

### C.      RLUIPA Claims

Defendants argue that they are entitled to summary judgment on Mohamad's claims brought under the RLUIPA claims because he is unable to maintain a RLUIPA action for money damages against them in either their individual or official capacities and because injunctive relief is no longer available to him.

As the United States Court of Appeals for the Third Circuits has recently observed:

> Congress enacted RLUIPA pursuant to its spending power under Article I of the Constitution.  When Congress enacts legislation pursuant to its spending power, it may attach conditions on the receipt of federal funds and essentially create a contract between the federal government and the State recipient. . . .  As a result, the statute may, as a condition of the funding, "subject the grant recipient to liability in a private cause of action, but the spending power cannot be used to subject individual defendants, such as state employees, to individual liability in a private cause of action."

> Thus, non-recipients of the funds, including individuals who are state officials, generally cannot be subject to private liability for monetary damages.

Sharp v. Johnson, ___ F.3d ___, ___, 2012 WL 400667 at *7 (3d Cir. Feb. 9, 2012).   Finding that the defendants were not parties to the contract between Pennsylvania and the federal government and that Pennsylvania, and not the defendants, would have been the recipient of any federal funds, the Court held that the defendants could not be held liable under RLUIPA and that the statute simply does not permit actions against State officials in their individual capacities.  Id.

at *8.  Thus, to the extent that Mohamad brings his RLUIPA claims against Defendants in their individual capacities, they are entitled to summary judgment.

Further, it is well established that the Eleventh Amendment bars money damages sought against a State or state official acting in his or her official capacity absent the consent of the State or a valid abrogation by Congress.  Kentucky v, Graham, 473 U.S. 159, 169 (1985).  Although a State may choose to waive its immunity in Federal Court, its consent to suit "must be 'unequivocally expressed' in the text of the relevant statute."  Sossamon v. Texas, ___ U.S. ___, ___, 131 S. Ct. 1651, 1658 (2011), quoting Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 99 (1984).  The Supreme Court of the United States has recently found that RLUIPA's authorization of "appropriate relief against a government," § 2000cc–2(a), is not the unequivocal expression of state consent that is required.  Id. at 1658-59.  Consequently, the Court held that "States, in accepting federal funding, do not consent to waive their sovereign immunity to private suits for money damages under RLUIPA."  Id. at 1663.  Thus, Mohamad's monetary claims against Defendants, to the extent he has sued them in their official capacities, are barred by sovereign immunity.

Finally, the Court notes that to the extent that Mohamad seeks injunctive relief for Defendants alleged violations of RLUIPA, his claims are moot.  As previously discussed, the incident that provides the basis for Mohamad's claims occurred at SCI-Forest.  Mohamad, however, has been transferred and is currently incarcerated at SCI-Graterford.  As such, injunctive relief is no longer available to him.   See Sutton v. Rasheed, 323 F.3d 236, 248-49 (3d Cir. 2003) (finding that because "an inmate's transfer from the facility complained of generally moots the equitable and declaratory claims," the plaintiffs' claims for declaratory and injunctive relief were moot because they had all either been released from prison or provided with the

specific relief requested); <u>Weaver v. Wilcox</u>, 650 F.2d 22, 27 (3d Cir. 1981) ("the courts have

held that a prisoner lacks standing to seek injunctive relief if he is no longer subject to the

alleged conditions he attempts to challenge") (citation omitted); <u>Fortes v. Harding</u>, 19 F. Supp.

2d 323, 326 (M.D. Pa. 1998) (where prisoner plaintiff had been transferred to another facility

with no indication of a reasonable likelihood that he will be returned to the original facility in the

foreseeable future, his requests to enjoin the defendants from interfering with his access to the

courts was "academic").  Because Mohamad's RLUIPA claims are barred or otherwise afford

him no relief, Defendants are entitled to summary judgment.

### D.      Fourteenth Amendment Equal protection Claims

Finally, Mohamad has alleged in the Complaint that Defendants violated the Fourteenth

Amendment.  ECF No. 3, ¶ III.  Mohamad, however, has not expounded upon his claim in either

the Complaint or in his subsequent submissions to the Court, leaving the Court to surmise that

Mohamad has invoked the Fourteenth Amendment merely as a vehicle by which the First and

Eighth Amendment are applied to the states.  This notwithstanding, to the extent that Mohamad

intended to raise a claim under the Equal Protection Clause of the Fourteenth Amendment,

Defendants are entitled to summary judgment.

The Equal Protection Clause provides that no state shall "deny to any person within its

jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  "[T]he purpose of

the equal protection clause of the Fourteenth Amendment is to secure every person within the

State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by

express terms of a statute or by its improper execution through duly constituted agents."  <u>Village</u>

<u>of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000) (internal quotations and citations omitted).

Thus, the Supreme Court has held that the equal protection clause is "essentially a direction that

all persons similarly situated should be treated alike." <u>City of Cleburne, Tex. v. Cleburne Living Ctr. Inc.</u>, 473 U.S. 432, 439 (1985).

Insofar as Mohamad contends that he was treated differently than other similarly situated inmates when Smith removed his kufi for his photo ID, he has not provided any evidence whatsoever to support his claim.  Rather, as previously discussed, the evidence shows that it was DOC policy that all head gear, including religious head gear, be removed when inmate ID photos were being taken.  ECF No. 46-3, pp. 13-14.  <u>See</u> ECF No. 46-1: p. 5 at ¶ 8; p. 12 at ¶ 8.  The absence of any evidence that others were permitted to wear head gear while having their pictures taken is fatal to Mohamad's claim.  As such, Defendants are entitled to summary judgment on Mohamad's Fourteenth Amendment claim as well.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment [ECF No. 45] is GRANTED.  An appropriate Order will be entered.


                                        /s/ Maureen P. Kelly
                                        MAUREEN P. KELLY
                                        UNITED STATES MAGISTRATE JUDGE


Dated: 12 March, 2012


cc:     Yassin Haythame Mohamad
        CU-0143
        SCI Graterford
        P.O. Box 244
        Graterford, PA 19426

        All Counsel of Record Via CM-ECF